UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

OLGA NEGRON, as Administrator of the Estate of IMAN
MORALES, Deceased and OLGA NEGRON,
Individually,

                                    Plaintiff,

-against-

THE CITY OF NEW YORK, P.O. NICHOLAS
MARCHESONA (Tax. Reg. #921535), And Administrator
of the Estate of LT. MICHAEL W. PIGOTT (Shield #
Unknown), Deceased,

                                      Defendants.
------------------------------------------------------------------------ x

**NOTICE OF MOTION**

09 CV 00944 (SLT)(SMG)

      **PLEASE TAKE NOTICE** that upon the Memorandum of Law in Support of City

Defendants' Motion to Dismiss on Qualified Immunity grounds dated July 28, 2010, and the Declaration

of Rachel Seligman Weiss, dated July 28, 2010, and Supporting Exhibits; and upon all prior pleadings and

proceedings had herein, defendants City of New York and Nicholas Marchesona will move this Court

before the Honorable Sandra L. Townes, United States District Judge, at the United States Courthouse for

the Eastern District of New York, located at 225 Cadman Plaza, Brooklyn, New York on a date and time

to be determined by the Court, for an order pursuant to Rule 12 of the Federal Rules of Civil Procedure

dismissing the complaint against the City defendants, together with such other relief as this Court deems

just proper.

      **PLEASE TAKE FURTHER NOTICE,** that opposition papers, if any, must be served on

the undersigned on or before September 27, 2010; and

**PLEASE TAKE FURTHER NOTICE**, that any reply papers by defendants must be

served on or before October 27, 2010.

Dated:      New York, New York
             July 28, 2010

                         MICHAEL A. CARDOZO
                         Corporation Counsel of the City of New York
                         Attorney for City Defendants
                         100 Church Street, Room 3-226
                         New York, New York 10007
                         (212) 788-0784

                         By:                          
                           RACHEL SELIGMAN WEISS
                           Assistant Corporation Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

OLGA NEGRON, as Administrator of the Estate of IMAN          **DECLARATION OF**
MORALES, Deceased and OLGA NEGRON,                           **RACHEL SELIGMAN WEISS**
Individually,

                                     Plaintiff,          09 CV 00944 (SLT)(SMG)

            -against-

THE CITY OF NEW YORK, P.O. NICHOLAS
MARCHESONA (Tax. Reg. #921535), And Administrator
of the Estate of LT. MICHAEL W. PIGOTT (Shield #
Unknown), Deceased,

                                   Defendants.

-------------------------------------------------------------------- X


        **RACHEL SELIGMAN WEISS**, declares pursuant to 28 U.S.C. § 1746, under

penalty of perjury, that the following is true and correct:

        I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation

Counsel of the City of New York, attorney for defendants City of New York and Nicholas

Marchesona.  As such, I am familiar with the facts stated below.  I submit this declaration in

support of defendants' Motion to Dismiss on Qualified Immunity grounds.

        1.  Annexed as "Exhibit A" is Plaintiff's Verified Complaint, dated February 24,

2009.

        2.  Annexed as "Exhibit B" is a copy of the civil docket sheet in <u>Olga Negron, et al.,</u>

<u>v. City of New York, et al.</u>, 09 CV 00944 (SLT)(SMG).

        3.  Annexed as "Exhibit C" is an Internal Affairs Bureau ("IAB") Investigating

Officer's Report, bearing Bates Nos. NYC 000638 – NYC 000641.

4.   Annexed as "Exhibit D" is Complaint Follow-Up Informational Report ("DD5"), bearing Bates No. NYC 000174.

5.   Annexed as "Exhibit E" is a Complaint Follow-Up Informational Report (DD5), bearing Bates No. NYC 000177.

6.   Annexed as "Exhibit F" is a Complaint Follow-Up Informational Report (DD5), bearing Bates No. NYC 000178.

7.   Annexed as "Exhibit G" is a Complaint Follow-Up Informational Report (DD5), bearing Bates No. NYC 000180.

8.   Annexed as "Exhibit H" is a copy of an article and photograph of the incident published in the New York Post in September 2008.

Dated: New York, New York
       July 28, 2010

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    Attorney for Defendants City and Marchesona
                    100 Church Street, Room 3-226
                    New York, New York 10007
                    (212) 788-0784

                    By: _____
                        Rachel Seligman Weiss
                        Assistant Corporation Counsel

- 2 -

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                                    Index #·4636/09
------------------------------------------------------------------x
OLGA NEGRON, as Administratrix of the Estate of
IMAN MORALES, Deceased  and OLGA NEGRON,
Individually                                                         VERIFIED
                                                                    COMPLAINT
                              Plaintiff

                    Against

THE CITY OF NEW YORK,
P.O. NICHOLAS MARCHESONA (Tax Reg. #921535),
And Administrator of the Estate of LT. MICHAEL. W.
PIGOTT (Shield # unknown), Deceased

                              Defendants
------------------------------------------------------------------x

     Plaintiff, **OLGA NEGRON**, by her attorneys, BURNS & HARRIS, as and for her Complaint herein, alleges upon information and belief, that on September 24, 2008 in the vicinity of 489 Tompkins Avenue, County of Kings, City and State of New York (unless otherwise specified):

1.  At all times relevant hereto, Defendant **CITY OF NEW YORK** is a municipality existing under and by virtue of the laws of the State of New York.

2.    At all times relevant hereto, defendant **CITY OF NEW YORK** operated, maintained, managed, supervised and controlled a police department as part of and in conjunction with its municipal functions.

3.    At all times relevant hereto, Defendant **P.O. NICHOLAS MARCHESONA (Tax Reg. #921535),** is employed as a police officer by the Police Department of the **CITY OF NEW YORK**.

4. At all times relevant hereto, defendant **P.O. NICHOLAS MARCHESONA (Tax Reg. #921535)** was, upon information and belief, assigned

to the New York City Police Department, County of Kings, City and State of New York.

5.      At all times relevant hereto, Defendant **LT. MICHAEL W. PIGGOTT (Shield #unknown),** was employed as a police officer by the Police Department of the **CITY OF NEW YORK**.

6.  At all times relevant hereto, defendant **LT. MICHAEL W. PIGGOTT (Shield #unknown)** was, upon information and belief, assigned to the New York City Police Department, County of Kings, City and State of New York.

7.  That all of the conditions precedent to the commencement of an action against the defendant **CITY OF NEW YORK** have been met in that a Notice of Claim was filed with the **CITY OF NEW YORK**, and within 90 days of the accrual of this cause of action; more than thirty (30) days have elapsed since the presentation of the Notice of Claim, and the claim remains unadjusted by the **CITY OF NEW YORK**. This action has been commenced within two years from the accrual of this cause of action, and **THE CITY OF NEW YORK** has conducted a statutory hearing of the plaintiff **OLGA NEGRON**.

### FIRST CAUSE OF ACTION:
### (POLICY OF NON-FEASANCE IN THE
### PROTECTION OF PLAINTIFF'S CIVIL RIGHTS)

8.      At all times relevant hereto, defendant **CITY OF NEW YORK** employed the  Defendant **P.O. NICHOLAS MARCHESONA,** as a police officer in the New York City Police Department.

2

9.     Upon information and belief, defendant **P.O. NICHOLAS MARCHESONA,** is a graduate of The Police Academy of the **CITY OF NEW YORK**.

10.     At all times relevant hereto, defendant **CITY OF NEW YORK** employed the Defendant **LT. MICHAEL W. PIGGOTT,** as a police officer in the New York City Police Department.

11.     Upon information and belief, defendant **LT. MICHAEL W. PIGGOTT,** was a graduate of The Police Academy of the **CITY OF NEW YORK**

12.     At all times relevant hereto, defendant **CITY OF NEW YORK** had the duty to competently and sufficiently hire, train and retain within the Police Academy and at the Command, Precinct and Patrol levels, the defendant Officers in the protection of the Constitutional rights of the plaintiff under the Fourteenth Amendment to the United States Constitution.

13.     In addition, the defendant **CITY OF NEW YORK,** had the duty to competently and sufficiently hire, train and retain within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers to conform their conduct to a standard, established by law, for the protection of citizens, such as plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly, and/or negligently inflict injuries to citizens such as the plaintiff herein.

14.     Each and all of the acts of the defendants alleged herein were done by the defendants, their agents, servants and/or employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, the **CITY OF NEW YORK** and the County of Kings, and under the authority of their office as police officers of said state, city and county.

3

15.   The defendant **CITY OF NEW YORK** failed to competently and sufficiently hire, train and retain the defendant officers to conform and conduct themselves to a statute established by law for the protection of citizens, such as plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as the plaintiff herein.

16.   That defendant CITY OF NEW YORK, in violation of 42 U.S.C. §1983 failed to properly regulate and promulgate appropriate and reasonable rules concerning officer's use of tasers including but not limited to defining when an officer may use a taser.

17.   That on or about September 24, 2008, the **CITY OF NEW YORK,** in violation of 42 U.S.C.§1983 caused the plaintiff/decedent **IMAN MORALES** to be injured, damaged and sustain a wrongful death in failing to competently hire, train and retain police officers, including but not limited to the defendant officers, to conform and conduct themselves to a standard established by law for the protection of citizens, such as plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

18.   On or about September 24, 2008, the plaintiff/decedent, **IMAN MORALES,** was lawfully and properly present at premises 489 Tompkins Avenue, County of Kings, City and State of New York.

19.   On or about September 24, 2008, the defendant **P.O. NICHOLAS MARCHESONA,** was present and on duty in the vicinity of 489 Tompkins Avenue, County of Kings, City and State of New York, as part of his regular and official employment as a police officer for the defendant, THE **CITY OF NEW YORK.**

4

20.     On or about September 24, 2008, the defendant **LT. MICHAEL PIGOTT,** was present and on duty in the vicinity of 489 Tompkins Avenue, County of Kings, City and State of New York, as part of his regular and official employment as a police officer for the defendant, THE **CITY OF NEW YORK**

21.     Commencing on September 24, 2008 the defendant officers deprived **IMAN MORALES** of his rights, life, and liberties as set forth in the Constitutions of the United States and of the State of New York.

22.     The injury and death of the plaintiff/decedent **IMAN MORALES** was caused by all of the defendants, their servants, agents and/or employees, without authority of law, or any reasonable cause or belief that deadly physical force was necessary.

23.     Plaintiff/decedent **IMAN MORALES** was unreasonably tasered and killed and thereby deprived of his rights, life, liberties and freedoms under color of State Law in violation of 42 U.S.C. §1983.

24.     That defendant LT. MICHAEL PIGGOTT recklessly, grossly negligently, carelessly, negligently and improperly issued an order to use a taser on plaintiff/decedent **IMAN MORALES**.

25.     That defendant LT. MICHAEL PIGGOTT recklessly, grossly negligently, carelessly, negligently and improperly gave an order to use a taser on plaintiff/decedent **IMAN MORALES** when said defendant knew or should have known that a taser should not have been used at the time and place of the occurrence.

26.     The defendant **P.O. NICHOLAS MARCHESONA** failed to give a warning to plaintiff/decedent prior to using the taser.

27.     The defendant **P.O. NICHOLAS MARCHESONA** failed to use his taser as "a last resort" against plaintiff/decedent **IMAN MORALES**.

5

28.    That defendant P.O. NICHOLAS MARCHESONA recklessly, grossly negligently, carelessly, negligently and improperly used a taser on the plaintiff/decedent **IMAN MORALES**.

29.    That defendant P.O. NICHOLAS MARCHESONA recklessly, grossly negligently, carelessly, negligently and improperly used a taser on the plaintiff/decedent **IMAN MORALES** in a situation when the plaintiff/decedent could fall from an elevated surface.

30.    The  defendant  **P.O.  NICHOLAS  MARCHESONA**  acted recklessly, grossly negligently,  unreasonably, and departed from ordinary care in using a taser on plaintiff/decedent who presented no threat of imminent death or serious physical injury to themselves or others.

31.    That defendant LT. MICHAEL PIGGOTT recklessly, grossly negligently, carelessly, negligently and improperly used a taser on the plaintiff/decedent **IMAN MORALES**.

32.    That defendant LT. MICHAEL PIGGOTT recklessly, grossly negligently, carelessly, negligently and improperly used a taser on the plaintiff/decedent **IMAN MORALES** in a situation when the plaintiff/decedent could fall from an elevated surface.

33.    The defendant **LT. MICHAEL PIGGOTT** acted recklessly, grossly negligently, unreasonably and departed from ordinary care in using a taser on plaintiff/decedent, who presented no threat of imminent death or serious physical injury to himself or to others.

34.    As a further result of the deprivation of plaintiff **IMAN MORALES'** right to be free guaranteed to him by the Fourteenth Amendment to the United States Constitution, he was caused to suffer injury, damage, and wrongful death.

35.    At all times relevant hereto, plaintiff/decedent **IMAN MORALES** was deprived of his right not to be subjected to use of excessive force by police that caused his loss of life guaranteed to him by the Fourth Amendment to the United States Constitution.

36.    On or about September 24, 2008, in violation of the rights, privileges and immunities guaranteed to him under the Fourteenth Amendment to the United States Constitution and under color of State law, the defendant officers and each of them acting individually and in concert, in violation of 42 U.S.C. Section 1983, while on duty, detained the plaintiff, even though the defendants knew or should have known that the plaintiff was wholly innocent.

37.    The detainment and tasering of the plaintiff was not justified by probable cause or other legal privilege.

38.    The defendants exhibited a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of the defendants.

39.    That the defendant **CITY OF NEW YORK**, its agents, servants and/or employees failed to hire, train, supervise, discipline or in any other way control the defendant officers in the exercise of their functions; that their failure to enforce the laws of the State of New York and the **CITY OF NEW YORK** was and is carried out negligently, willfully, maliciously and with such reckless disregard for the consequences so as to display a conscious disregard for the

7

dangers of harm and injury to citizens of the State and **CITY OF NEW YORK**, including plaintiff/decedent herein.

40.     That the plaintiff/decedent **IMAN MORALES** did not commit any illegal act, either before or at the time he was improperly detained and tasered and killed, and deprived of his constitutional rights as set forth in the Constitution of the United States, particularly 42 U.S.C §1983, and the Constitution of the State of New York.

41.     That at all times hereinafter mentioned, the defendant police officers were employed in their respective capacities by the defendant **CITY OF NEW YORK** and were acting under the color of their official capacity as Sate actors and their acts were performed under the color of the policies, statutes, ordinances, rules and regulations of the **CITY OF NEW YORK**.

42.     Although defendants knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and/or employees, the defendant **CITY OF NEW YORK** has not taken any steps or made any efforts to halt this course of conduct, to make redress to the plaintiff or other citizens injured thereby, or to take any disciplinary action whatsoever against any of their employees or agents.

43.     The unlawful and illegal conduct of the defendants, their agents, servants and/or employees and each of them, deprived plaintiff/decedent of the following rights, privileges and immunities secured to him by the Constitution of the United States and of the State of New York:  the right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States and the right not to be subjected to the use of excessive force by police that caused loss of life pursuant to the Fourth Amendment to the Constitution of the United States.

8

44.     That by reason of the foregoing, this plaintiff/decedent was severely injured, damaged, and caused to sustain a wrongful death, all to plaintiff's great damage.

45.     That heretofore and prior to the commencement of this action, the plaintiff **OLGA NEGRON**, was appointed Administratrix of the Estate of **IMAN MORALES**, Deceased, by Order of the Surrogate Court, Kings County dated october 29, 2008, and said plaintiff has duly qualified and is currently acting in such capacity.

46.     That by reason of the foregoing, this plaintiff/decedent was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, loss of enjoyment of life, and wrongful death all to plaintiff's great damage

47.     That on or about September 24, 2008, in violation of the rights, privileges and immunities guaranteed to him under the Fourteenth and Fourth Amendments to the United States Constitution and under the color of State law, the defendants acted individually and in concert causing the plaintiff to have been injured and damaged in an amount exceeding the jurisdictional limit of this Court, to be determined upon the trial of this action.

## SECOND CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

48.     Plaintiff repeats and realleges each and every allegation contained herein, as though the same were set forth at length herein.

49.     The plaintiff/decedent **IMAN MORALES**, did not possess a weapon of any kind during the incident of September 24, 2008.

9

50.     The defendant **P.O. NICHOLAS MARCHESONA** failed to give a warning to plaintiff/decedent prior to using a taser.

51.     The defendant **P.O. NICHOLAS MARCHESONA** failed to use a taser as "a last resort" against plaintiff/decedent **IMAN MORALES** who presented no threat of imminent death or serious physical injury.

52.     The defendant **LT. WILLIAM PIGOTT** failed to give a warning to plaintiff/decedent prior to **giving an order to** using a taser.

53.     The defendant **LT. WILLIAM PIGOTT** failed to use a taser as "a last resort" against plaintiff/decedent **IMAN MORALES** who presented no threat of imminent death or serious physical injury

54.     The defendant, **CITY OF NEW YORK,** was negligent in its operation, management, supervision and control of its Police Department; in not providing adequate training of defendant police officers while at the Police Academy; in their supervision of defendant police officers; in failing to provide adequate supervision of defendant police officers during their training at the Police Academy.

55.     The defendant **P.O. NICHOLAS MARCHESONA** used deadly physical force without having probable cause that his life or the lives of others present were in imminent danger of death or serious physical injury.

56.     The defendants **P.O. NICHOLAS MARCHESONA,** acted unreasonably and departed from ordinary care in using a taser on plaintiff/decedent, who presented no threat of imminent death or serious physical injury.

10

57.    The defendant **P.O. NICHOLAS MARCHESONA,** was negligent in failing to use reasonable care in the detainment and confinement of the plaintiff, **IMAN MORALES** on or about September 24, 2008.

58.    The defendant **LT. WILLIAM PIGOTT** used deadly physical force without having probable cause that his life or the lives of others present were in imminent danger of death or serious physical injury.

59.    The defendant **LT. WILLIAM PIGOTT,** acted unreasonably and departed from ordinary care in issuing an order to use a taser on plaintiff/decedent, who presented no threat of imminent death or serious physical injury.

60.    The defendant **LT. WILLIAM PIGOTT,** was negligent in failing to use reasonable care in the detainment and confinement of the plaintiff, **IMAN MORALES** on or about September 24, 2008

61.    That by reason of the foregoing, this plaintiff was severely injured and damaged, suffered loss of enjoyment of life, and caused to sustain a wrongful death.

62.    By reason of the negligence of the defendants, the plaintiff **IMAN MORALES,** has been damaged in an amount exceeding the jurisdictional limit of this Court, to be determined upon the trial of this action.

### THIRD CAUSE OF ACTION
### (LOSS OF ENJOYMENT OF LIFE)

63.    Plaintiff, repeats and realleges each and every allegation contained herein, as though the same were set forth at length.

11

64.    That at all times mentioned herein, plaintiff/decedent **IMAN MORALES** was able to perform daily tasks, to participate in the activities which were a part of his life before the incident of September 24, 2008, and to experience the pleasures of life.

65.    The unlawful and illegal conduct of the defendants, their agents, servants and/or employees and each of them deprived plaintiff/decedent of his ability to perform daily tasks, to participate in the activities which were a part of his life before the incident of September 24, 2008, and to experience the pleasures of life.

66.    The unlawful and illegal conduct of the defendants, their agents, servants and/or employees and each of them, deprived plaintiff/decedent of the following rights, privileges and immunities secured to him by the Constitution of the United States and of the State of New York:  the right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States and the right not to be subjected to the use of excessive force by police that caused loss of life pursuant to the Fourth Amendment to the Constitution of the United States.

67.    That as a result of the lawless conduct of the defendants, their agents, servants and/or employees and each of them, plaintiff/decedent suffered a loss of enjoyment of life.

68.    That by reason of the foregoing, this plaintiff was severely injured and damaged, suffered loss of enjoyment of life, and was caused to sustain a wrongful death.

12

69.     By reason of the negligence of the defendants, the plaintiff **IMAN MORALES,** has been damaged in an amount exceeding the jurisdictional limit of this Court, to be determined upon the trial of this action.

### FOURTH CAUSE OF ACTION
### (ASSAULT AND BATTERY)

70.     Plaintiff, repeats and realleges each and every allegation contained herein, as though the same were set forth at length.

71.     On our about September 24, 2008, in the vicinity of 489 Tompkins Avenue, County of Kings, City and State of New York, the plaintiff/decedent **IMAN MORALES** was assaulted and battered by the defendant police officer and/or others acting in concert with him.

72.     The force used in the course of the use of a taser by the defendants was excessive, unnecessary, unwarranted and violent.

73.     As a result of the defendant officers' aforementioned assault and battery of the plaintiff/decedent **IMAN MORALES**, plaintiff/decedent has been damaged and seriously injured, sufered loss of enjoyment of his life leading to his death, in an amount exceeding the jurisdictional limit of this Court to be determined in a trial of this action,

### FOURTH CAUSE OF ACTION
### WRONGFUL DEATH

74.     That plaintiff repeats, reiterates and realleges each and every allegation as contained in the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

13

all lower Courts which would otherwise have jurisdiction, in an amount to be determined upon the trial of this action,

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF OLGA NEGRON

80.    That plaintiff **OLGA NEGRON** repeats, reiterates and realleges each and every allegation as contained in the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

81.    That at all times hereinafter mentioned, plaintiff **OLGA NEGRON** was the mother of decedent, **IMAN MORALES**, and was entitled to his love, companionship, and services.

82.    As a result of the injuries and wrongful death of the plaintiff **IMAN MORALES**, the plaintiff **OLGA NEGRON** was permanently deprived of the services, society, love, affection, aid, maintenance, companionship and contribution of the said decedent, and was severely damaged.

83.    That by reason of the foregoing, the plaintiff **OLGA NEGRON**, has sustained damages in an amount in excess of the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction, in an amount to be determined upon the trial of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF OLGA NEGRON

84.    That plaintiff **OLGA NEGRON** repeats, reiterates and realleges each and every allegation as contained in the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

85.     That at all times hereinafter mentioned, **OLGA NEGRON** was the mother of the plaintiff/decedent **IMAN MORALES.**

86.     That on September 24, 2008, Plaintiff, **OLGA NEGRON** was lawfully present in the vicinity of premises 489 Tompkins Avenue, County of Kings, City and State of New York, and was thrust within a "Zone of Danger" by the defendants.

87.     Specifically, plaintiff **OLGA NEGRON** was compelled to witness her son being abused when the defendants, their agents, servants and/or employees recklessly, grossly negligently, carlessly, negligently and improperly used a taser upon said decedent, causing him to sustain a wrongful death and deprived of his Civil Rights by being illegally and unlawfully assaulted, detained and arrested by the defendants.

88.     As a result of the aforesaid injection into a "zone of danger" by the defendants, the plaintiff OLGA NEGRON, has been damaged in an amount exceeding the jurisidictional limit of this Court, to be determined upon the trial of this action.

**WHEREFORE**, plaintiff demands judgment against the defendants on Each Cause of Action in amounts to be determined upon the trial of this action, together with costs and interest, and

Additionally, plaintiff demands in respect of all Causes of Action, the additional total sum of **TEN MILLION ($10,000,000.00) DOLLARS** in punitive damages and attorney fees pursuant to 42 U.S.C.§1988, and

Finally, plaintiff demands injunctive relief, in that this Court should compel defendant City of New York to control illegal conduct among its police officers.

16

Dated:    New York, New York
          February 24, 2009

Yours, etc.

**BURNS & HARRIS, ESQ.**
**Attorneys for Plaintiff**

BY: _____
    SETH A. HARRIS, ESQ.
    233 Broadway, Suite 900
    New York, NY  10279
    212 393-1000

17

Re:    Negron v. City of New York

## ATTORNEY VERIFICATION

SETH A. HARRIS, an attorney duly admitted to practice law in the Courts of the State of New York, shows:

I am the attorney for the plaintiff in the within action and have read the foregoing **COMPLAINT** and know the contents thereof; the same is true upon information and belief.

This verification is made by this affirmant and not by said plaintiff because said plaintiff reside(s) in a County other than the County wherein your affirmant maintains his office.

The grounds of affirmant's knowledge and belief are as follows: Conference with clients and notes and records contained in the file maintained in the regular course of business.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
       February 24, 2009

SETH A. HARRIS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                                        Index #
-------------------------------------------------------------------------x
OLGA NEGRON, as Administratrix of the Estate of
IMAN MORALES, Deceased  and OLGA NEGRON,
Individually

Plaintiff

Against

THE CITY OF NEW YORK,
P.O. NICHOLAS MARCHESONA (Tax Reg. #921535),
And Administrator of the Estate of LT. MICHAEL. W.
PIGOTT (Shield # unknown), Deceased

Defendants

-------------------------------------------------------------------------x

**SUMMONS and
VERIFIED COMPLAINT**

**BURNS & HARRIS, ESQS.
Attorneys for Plaintiff
Office & P. O. Address
233 Broadway, Suite 900
New York, NY  10279
212 393-1000
Fax: 212 267-2110**

Exhibit B

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:09-cv-00944-SLT-SMG

| | |
|---|---|
| Negron v. The City of New York et al | Date Filed: 03/06/2009 |
| Assigned to: Judge Sandra L. Townes | Jury Demand: Both |
| Referred to: Chief Magistrate Steven M. Gold | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1446 Notice of Removal | Jurisdiction: Federal Question |

**Plaintiff**

**Olga Negron**
*Individually as Administratrix of the*
*Estate of Iman Morales, Deceased*

represented by **Seth A. Harris**
Burns & Harris, Esq.
233 Broadway, Suite 900
New York, NY 10279
212-393-1000
Fax: 212-267-2110
Email: sharris@burnsharris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The City of New York**

represented by **Rachel Amy Seligman**
The City of New York Law Department

Office of Corporation Counsel
100 Church Street
New York, NY 10007
1-212-788-0784
Fax: 1-212-788-9776
Email: rseligma@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven R. Payne**
Corporation Counsel
100 Church Street
New York, NY 10007
212-788-1631
Email: spayne@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth N. Krasnow**
New York City Law Department
100 Church Street
New York, NY 10007

212-442-8639
Fax: 212-788-9776
Email: ekrasnow@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Gabriel Paul Harvis**
New York City Law Department
Office of the Corporation Counsel
Special Federal Litigation Division
100 Church Street
New York, NY 10007
212-788-1816
Fax: 212-788-9776
Email: gharvis@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**P.O. Nicholas Marchesona**
*(Tax Re., 921535) and Administrator of
the Estate of Lt. Michael W. Pigott
(Shield #unknown) deceased*

represented by **Rachel Amy Seligman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth N. Krasnow**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabriel Paul Harvis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Susan Pigott**
*Executrix of the Estate of Lt. Michael
W. Pigott, s/h/a Administrator of the
Estate of Lt. Michael W. Pigott*

represented by **Alexander Peltz**
Peltz & Walker
222 Broadway
25th Floor
New York, NY 10038
212-349-6775
Fax: 212-227-4002
Email: apeltz@peltzwalker.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2009 | 1 | NOTICE OF REMOVAL by The City of New York from Supreme Court of the State of New York, County of Kings, case number 4636/09. ( Filing fee $ 350) Disclosure Statement on Civil Cover Sheet completed -y, (Attachments: # 1 Civil Cover Sheet) (Davis, Kimberly) (Entered: 03/06/2009) |
| 03/09/2009 | 2 | SCHEDULING ORDER: An Initial Conference has been scheduled for 6/3/2009 at 3:00 PM in Courtroom 13D South. Counsel are directed to refer to |

| | | |
|---|---|---|
| | | and comply with the attached Order. So Ordered by Chief Magistrate Judge Steven M. Gold on 3/9/2009. (Vasquez, Lea) (Entered: 03/09/2009) |
| 03/26/2009 | 3 | Letter by Olga Negron (Harris, Seth) (Entered: 03/26/2009) |
| 03/27/2009 | 4 | First MOTION for Extension of Time to File Answer by The City of New York. (Seligman, Rachel) (Entered: 03/27/2009) |
| 03/27/2009 | 5 | REPLY in Opposition *to plaintiff's request for an order directing production of the autopsy report* filed by The City of New York. (Seligman, Rachel) (Entered: 03/27/2009) |
| 03/30/2009 | | **SCHEDULING ORDER:** A Telephone Conference will be held at 10:00 a.m. on April 7th. Counsel for plaintiff is directed to arrange the call with all parties as well as confirm with defendants' counsel that they are aware of this conference date and time. So Ordered by Chief Magistrate Judge Steven M. Gold on 3/30/2009. (Vasquez, Lea) (Entered: 03/30/2009) |
| 03/31/2009 | 6 | Letter by Olga Negron (Harris, Seth) (Entered: 03/31/2009) |
| 04/03/2009 | 7 | Letter by Olga Negron (Harris, Seth) (Entered: 04/03/2009) |
| 04/06/2009 | 8 | Mail receipt (Harris, Seth) (Entered: 04/06/2009) |
| 04/07/2009 | | **Minute Order for telephone conference held on 4/7/2009 before Chief Magistrate Judge Steven M. Gold:** GRANTING 4 Motion for Extension of Time to Answer The City of New York answer due 5/27/2009; Nicholas Marchesona answer due 5/27/2009; Harris for plaintiff, Seligman for City of NY. City's application to extend time to answer granted. Plaintiff shall ensure that individual defendants have been or are served and file affidavits of service promptly. (Vasquez, Lea) (Entered: 04/07/2009) |
| 04/07/2009 | 9 | AFFIDAVIT of Service for Summons and Complaint served on City of New York, P.O. Marchesona on 2/26/09 and 3/5/09, filed by Olga Negron. (Harris, Seth) (Entered: 04/07/2009) |
| 05/27/2009 | 10 | ANSWER to Complaint by The City of New York, Nicholas Marchesona. (Seligman, Rachel) (Entered: 05/27/2009) |
| 05/27/2009 | 11 | Letter *regarding service upon the Estate of Michael W. Pigott* by The City of New York (Seligman, Rachel) (Entered: 05/27/2009) |
| 06/04/2009 | | **Minute Entry for Initial Conference Hearing held on 6/3/2009 before Chief Magistrate Judge Steven M. Gold:** Prabhu for plaintiffs, Seligman for defendants. Defendants will serve interrogatories and document demands by June 10. Defendants will answer the outstanding interrogatories and document demands by July 2, and plaintiffs will answer defendants' interrogatories and document demands by July 9. Defendants' demand for plaintiffs' medical records is limited to three years prior to the events in issue without prejudice to renewal upon a showing that earlier records will be relevant. The court will hold a settlement and status conference at 2:00 pm on August 11. Counsel shall have a firm position on settlement, with principals present or available by telephone, and shall be prepared to schedule depositions if the case cannot be settled at that time. (Vasquez, Lea) (Entered: 06/04/2009) |

| | | |
|---|---|---|
| 06/08/2009 | 12 | AFFIDAVIT of Service for summons and complaint served on Administrator of Estate of Lt. Michael W.Pigott on May 30, 2009, filed by Olga Negron. (Harris, Seth) (Entered: 06/08/2009) |
| 06/22/2009 | 13 | MOTION for Extension of Time to File Answer by The City of New York. (Seligman, Rachel) (Entered: 06/22/2009) |
| 06/23/2009 | | ORDER granting 13 Motion for Extension of Time to Answer Nicholas Marchesona answer due 7/22/2009 provided there are no objections filed by plaintiff by June 25th. So Ordered by Chief Magistrate Judge Steven M. Gold on 6/23/2009. (Vasquez, Lea) (Entered: 06/23/2009) |
| 06/25/2009 | 14 | Letter by Olga Negron (Harris, Seth) (Entered: 06/25/2009) |
| 06/25/2009 | | **SCHEDULING ORDER:** A telephone conference will be held at 2:00 p.m. on June 26th to address the issue of defendants' request for an extension of time to file an answer and plaintiff's subsequent objection to the application. Counsel for defendant is directed to arrange the call with all parties. So Ordered by Chief Magistrate Judge Steven M. Gold on 6/25/2009. (Vasquez, Lea) (Entered: 06/25/2009) |
| 06/28/2009 | | **Minute Entry Telephone Conference held on 6/26/2009 before Chief Magistrate Judge Steven M. Gold:** Prabhu for plaintiff, Seligman for defendants. No action will be taken by plaintiff with respect to the Estate of Pigott's failure to answer the complaint until after July 22, 2009. If the defendant Estate has not answered by that date, plaintiff may seek entry of its default. (Vasquez, Lea) (Entered: 06/28/2009) |
| 07/21/2009 | 15 | Second MOTION for Extension of Time to File Answer by The City of New York. (Seligman, Rachel) (Entered: 07/21/2009) |
| 07/23/2009 | | ORDER granting 15 Motion for Extension of Time to Answer Nicholas Marchesona answer due 8/5/2009. So Ordered by Chief Magistrate Judge Steven M. Gold on 7/23/2009. (Vasquez, Lea) (Entered: 07/23/2009) |
| 08/04/2009 | 16 | ANSWER to Complaint by Susan Pigott. (Clarke, Melonie) (Entered: 08/04/2009) |
| 08/12/2009 | | **Minute Entry for Status Conference held on 8/11/2009 proceedings held before Chief Magistrate Judge Steven M. Gold:** Keenan for plaintiff, Seligman for City defendants, Peltsin for Estate defendant. Defendants may seek a premotion conference,as provided in the chambers practices of Judge Townes, in connection with their anticipated motion to dismiss plaintiff's claims for damages other than for wrongful death and conscious pain and suffering, by September 22. The parties will proceed with document discovery, but interrogatories and depositions are stayed pending the outcome of the motion and absent further application to the court. Counsel are encouraged to contact my chambers to arrange a settlement conference, or for resolution of any ripe discovery disputes, if they believe it would be productive to do so. (Vasquez, Lea) (Entered: 08/12/2009) |
| 09/21/2009 | 17 | First MOTION for Extension of Time to File *request for pre-motion conference* by Nicholas Marchesona, The City of New York. (Seligman, |

| | | |
|---|---|---|
| | | Rachel) (Entered: 09/21/2009) |
| 09/22/2009 | | ORDER granting <u>17</u> Motion for Extension of Time to September 29th to file a pre-motion conference letter. So Ordered by Chief Magistrate Judge Steven M. Gold on 9/22/2009. (Vasquez, Lea) (Entered: 09/22/2009) |
| 09/23/2009 | <u>18</u> | MOTION for Settlement *conference* by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 09/23/2009) |
| 09/24/2009 | 19 | Letter by Olga Negron (Harris, Seth) (Entered: 09/24/2009) |
| 09/24/2009 | | **SCHEDULING ORDER:** A telephone conference will be held at 10:00 a.m. on September 30, 2009. Counsel for plaintiff is directed to arrange the call with all parties as well as confirm this conference date and time defendants' counsel. So Ordered by Chief Magistrate Judge Steven M. Gold on 9/24/2009. (Vasquez, Lea) (Entered: 09/24/2009) |
| 10/01/2009 | | **Minute Entry for Telephone Conference held on 9/30/2009 before Chief Magistrate Judge Steven M. Gold:** Keenan for plaintiff, Seligman for City, Peltz for Estate of defendant Marchesona. THE COURT WILL HOLD A CONFERENCE AT 2:00 PM ON OCTOBER 16. PLAINTIFF SHALL BE PRESENT, AND DEFENDANTS' PRINCIPALS PRESENT OR AVAILABLE BY TELEPHONE. Counsel shall submit letters addressing their respective positions on any legal issues they wish to raise at the conference by October 13. Counsel shall also be prepared to set a discovery schedule, and to reschedule a date for submission of pre-motion conference applications with respect to any anticipated motions directed to the pleadings. (Vasquez, Lea) (Entered: 10/01/2009) |
| 10/13/2009 | 20 | Letter by Olga Negron (Harris, Seth) (Entered: 10/13/2009) |
| 10/13/2009 | 21 | Letter by The City of New York (Seligman, Rachel) (Entered: 10/13/2009) |
| 10/13/2009 | <u>22</u> | Letter by Susan Pigott (Peltz, Alexander) (Entered: 10/13/2009) |
| 10/20/2009 | | **Minute Entry for Status Conference held on 10/16/2009 before Chief Magistrate Judge Steven M. Gold:** Harris (with Negron) for plaintiff, Seligman for city defendants, Peltz for estate defendants. Counsel will work together and complete paper discovery by December 4. Any motions to compel or for protective orders will be filed by December 14, with opposition filed by December 21 and replies, if any, by January 5. THE COURT WILL HOLD A CONFERENCE AT 11:00 A.M. ON JANUARY 12, 2010. Counsel shall be prepared to address all outstanding discovery disputes, and to confirm the schedule for outstanding depositions. If plaintiff seeks a settlement conference, a letter request may be submitted. (Vasquez, Lea) (Entered: 10/20/2009) |
| 12/04/2009 | <u>23</u> | MOTION for Extension of Time to Complete Discovery *and File any Discovery Motions* by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 12/04/2009) |
| 12/08/2009 | 24 | Letter by Olga Negron (Harris, Seth) (Entered: 12/08/2009) |
| 12/09/2009 | | ORDER granting <u>23</u> Motion to Complete Discovery. So Ordered by Chief Magistrate Judge Steven M. Gold on 12/9/2009. (Vasquez, |

| | | Lea) (Entered: 12/09/2009) |
|---|---|---|
| 12/09/2009 | | **RE-SCHEDULING ORDER:** The conference previously scheduled for January 12th will instead be held at 11:00 a.m. on March 16, 2010. So Ordered by Chief Magistrate Judge Steven M. Gold on 12/9/2009. (Vasquez, Lea) (Entered: 12/09/2009) |
| 01/04/2010 | 25 | MOTION for Protective Order *and to compel discovery* by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 01/04/2010) |
| 01/04/2010 | 26 | First MOTION to Compel *discovery* by Olga Negron. (Harris, Seth) (Entered: 01/04/2010) |
| 01/08/2010 | | ORDER deferring ruling on 25 Motion for Protective Order; deferring ruling on 26 Motion to Compel. The Court will hold an in-person conference to address all outstanding discovery disputes at 2:00 p.m. on January 21, 2010. Counsel shall agree upon a schedule that results in all pending discovery motions being fully briefed by January 15th. So Ordered by Chief Magistrate Judge Steven M. Gold on 1/8/2010. (Vasquez, Lea) (Entered: 01/08/2010) |
| 01/11/2010 | 27 | Letter MOTION for Extension of Time to File Response/Reply as to 26 First MOTION to Compel *discovery and for an Extension of Time for the Parties to file their Reply Papers, if any* by Nicholas Marchesona, The City of New York. (Harvis, Gabriel) (Entered: 01/11/2010) |
| 01/11/2010 | 28 | Letter by Olga Negron (Harris, Seth) (Entered: 01/11/2010) |
| 01/11/2010 | | ORDER granting 27 Motion for Extension of Time to File Response/Reply. So Ordered by Chief Magistrate Judge Steven M. Gold on 1/11/2010. (Vasquez, Lea) (Entered: 01/11/2010) |
| 01/13/2010 | 29 | Letter by Olga Negron (Harris, Seth) (Entered: 01/13/2010) |
| 01/13/2010 | 30 | MEMORANDUM in Opposition *to Plaintiff's Motion to Compel* filed by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 01/13/2010) |
| 01/18/2010 | 31 | REPLY in Support *of defendant The City of New York's motion for a protective order* filed by Susan Pigott. (Peltz, Alexander) (Entered: 01/18/2010) |
| 01/19/2010 | 32 | Letter by Olga Negron (Harris, Seth) (Entered: 01/19/2010) |
| 01/20/2010 | 33 | Letter by Olga Negron (Harris, Seth) (Entered: 01/20/2010) |
| 01/20/2010 | 34 | REPLY in Support re 25 MOTION for Protective Order *and to compel discovery* filed by Nicholas Marchesona, The City of New York. (Harvis, Gabriel) (Entered: 01/20/2010) |
| 01/25/2010 | | Minute Entry for Discovery Hearing held on 1/21/2010 before Chief Magistrate Judge Steven M. Gold: Benno for plaintiff, Seligman and Harvis for City defendants. Pelts for Estate of Pigott. Plaintiff will submit organized responses to defendants' interrogatories and document demands by Feb. 11. By the same date, defendant Estate of Pigott will either confirm that it will not make a dispositive motion that depends in any way on a finding with respect to Pigott's state of mind, or propose a means of discovering relevant portions of |

| | | the investigative file concerning Pigott's death. The conference previously set for March 16 will proceed as scheduled. Counsel may begin conducting depositions at their earliest mutual convenience, and shall be prepared to set a schedule for completing discovery at the next conference. Counsel are encouraged to contact my chambers if they would like to schedule a settlement conference. (Tape #FTR 2:06-2:45.) (Vasquez, Lea) (Entered: 01/25/2010) |
|---|---|---|
| 01/26/2010 | 35 | Letter *in response to plaintiff's letter dated January 14, 2010 and filed on January 19, 2010* by Nicholas Marchesona, The City of New York (Seligman, Rachel) (Entered: 01/26/2010) |
| 01/26/2010 | 36 | Letter *(revised) in response to plaintiff's letter dated January 14, 2010 and filed on January 19, 2010* by Nicholas Marchesona, The City of New York (Seligman, Rachel) (Entered: 01/26/2010) |
| 02/04/2010 | 37 | ORDER: Plaintiff's request for a "pre-motion conference to address plaintiff's motion for clarification of a claim for loss of life" is hereby DENIED. Ordered by Judge Sandra L. Townes on 1/29/2010. (See order for detail). (Clarke, Melonie) (Entered: 02/04/2010) |
| 02/12/2010 | 38 | MOTION for Summary Judgment by Susan Pigott. (Peltz, Alexander) (Entered: 02/12/2010) |
| 03/09/2010 | 39 | STIPULATION *and Protective Order for the Court's endorsement* by Nicholas Marchesona, The City of New York (Seligman, Rachel) (Entered: 03/09/2010) |
| 03/10/2010 | | ORDER re 39 Stipulation filed by The City of New York, Nicholas Marchesona. The stipulation is approved and hereby entered as an Order of the Court. So Ordered by Chief Magistrate Judge Steven M. Gold on 3/10/2010. (Vasquez, Lea) (Entered: 03/10/2010) |
| 03/15/2010 | | Motions terminated, docketed incorrectly: 38 MOTION for Summary Judgment filed by Susan Pigott. This is not a motion for summary judgment but a letter explaining the grounds for defendant's potential summary judgment motion. (Miller, Ilana) (Entered: 03/15/2010) |
| 03/19/2010 | | Minute Entry for Status Conference held on 3/16/2010 before Chief Magistrate Judge Steven M. Gold: Donadio for plaintiffs, Seligman and Arbus for City defendants, Peltz for Estate of Pigott. Defendants' demand for Negron's medical records going back ten years, and their demand for records of Morales' medical treatment in California, are approved for reasons stated during the conference. Defendants shall promptly provide plaintiffs with the identifying "Bates" numbers of the ESU documents discussed today. Counsel shall confer and attempt to reach agreement on the outstanding matters discussed today, including whether plaintiff Negron's medical records involving her hospitalization for chest pain should be subject to discovery; whether limited discovery in anticipation of summary judgment motion practice with respect to qualified immunity should be taken, and other discovery stayed pending a decision on the motion; and the scope and schedule for discovery relevant to the anticipated qualified immunity motions. A CONFERENCE TO ADDRESS THESE AND ANY OTHER THEN-OUTSTANDING MATTERS WILL BE HELD AT 12 NOON ON APRIL 1, 2010. (Vasquez, Lea) (Entered: 03/19/2010) |

| 03/30/2010 | | RE-SCHEDULING ORDER: The status conference previously scheduled for 12:00p.m. on April 1 will instead be held at 2:00p.m. on the same date, April 1, 2010. Ordered by Chief Magistrate Steven M. Gold on 3/30/2010. (Miller, Ilana) (Entered: 03/30/2010) |
| --- | --- | --- |
| 04/07/2010 | | **Minute Entry for Status Conference held on 4/1/2010 before Chief Magistrate Judge Steven M. Gold:** Donadio for plaintiffs, Seligman and Harvis for City of New York, Pelts for Estate of Pigott. (1) If plaintiffs seek to amend their complaint, they shall serve defendants with a proposed amended pleading by April 15. Defendants will state, in writing, whether or not they consent to the amendment by April 22. If they do not consent, plaintiffs will submit a pre-motion conference application seeking to move for leave to amend complaint their complaint by April 29. (2) If defendants seek to move to dismiss on grounds of qualified immunity, they shall submit a pre-motion conference application by April 29. If they do so, all discovery except for document demands and production will be stayed, without prejudice to plaintiff's right to make a formal motion seeking to lift the stay. (3) If defendants do not seek leave to dismiss on grounds of qualified immunity, discovery will proceed on the following schedule: Fact discovery will be completed by October 1, 2010. Plaintiffs will serve their expert disclosures by November 1, and defendants will serve their expert disclosures by December 15. NEXT CONFERENCE: OCTOBER 6, 2010 AT 10 :00 AM. Counsel shall have a firm position on settlement, with principals present or available by telephone; shall be in a position to describe the basis for any anticipated motion for summary judgment; and shall have a position on whether they will consent to reassignment of this action to a magistrate judge for all purposes including trial. Counsel may seek leave by October 1 to adjourn the conference set for October 6 until expert discovery has been completed if they believe it would be more efficient to do so. (Vasquez, Lea) (Entered: 04/07/2010) |
| 04/29/2010 | <u>40</u> | Letter MOTION for pre motion conference by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 04/29/2010) |
| 04/29/2010 | <u>41</u> | REPLY in Support re 40 Letter MOTION for pre motion conference filed by Susan Pigott. (Peltz, Alexander) (Entered: 04/29/2010) |
| 05/07/2010 | <u>42</u> | Letter by Olga Negron (Harris, Seth) (Entered: 05/07/2010) |
| 05/07/2010 | <u>43</u> | Letter by Olga Negron (Harris, Seth) (Entered: 05/07/2010) |
| 05/14/2010 | | ORDER granting <u>18</u> Motion for Settlement conference. See Minute Entry for Telephone Conference held on 9/30/2009. Ordered by Chief Magistrate Steven M. Gold on 5/14/2010. (O'Connor, Erin) (Entered: 05/14/2010) |
| 05/14/2010 | | ORDER granting in part and denying in part 25 Motion for Protective Order; granting in part and denying in part 26 Motion to Compel. See Minute Entry for conference held on 1/21/2010. Ordered by Chief Magistrate Steven M. Gold on 5/14/2010. (O'Connor, Erin) (Entered: 05/14/2010) |
| 05/20/2010 | | ORDER re 40 Motion for Pre Motion Conference. The Court grants Defendants leave to file a motion to dismiss the complaint pursuant to F.R.C.P. 12(c). Defendants' Motion shall be served by June 28, 2010. Plaintiff's Opposition shall be served by August 27, 2010. Defendants' Reply, if any, |

| | | shall be served by September 27, 2010. Defendants shall electronically file the fully-briefed motion on ECF by September 30, 2010. Ordered by Judge Sandra L. Townes on 5/20/2010. (Bumatay, Patrick) (Entered: 05/20/2010) |
|---|---|---|
| 06/18/2010 | 44 | NOTICE of Appearance by Elizabeth N. Krasnow on behalf of Nicholas Marchesona, The City of New York (aty to be noticed) (Krasnow, Elizabeth) (Entered: 06/18/2010) |
| 06/18/2010 | 45 | First MOTION for Extension of Time to File *Motion to Dismiss on Qualified Immunity Grounds on behalf of all defendants* by Nicholas Marchesona, The City of New York. (Seligman, Rachel) (Entered: 06/18/2010) |
| 06/22/2010 | 46 | ORDER granting 45 Motion for Extension of Time to File. Ordered by Judge Sandra L. Townes on 6/21/2010. (Clarke, Melonie) (Entered: 06/22/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/27/2010 14:38:59 | | |
| **PACER Login:** ny0608 | **Client Code:** 0520744 | |
| **Description:** Docket Report | **Search Criteria:** | 1:09-cv-00944-SLT-SMG |
| **Billable Pages:** 7 | **Cost:** | 0.56 |

Exhibit C

POLICE DEPARTMENT
CITY OF NEW YORK

INTERNAL AFFAIRS BUREAU
**INVESTIGATING OFFICER'S REPORT**

*From:* Det. Mark E. Dennis

*Command:* Group 54

*Outside Guidelines#:* 08-0538

*Log#:* 08-43207

*Accompanying Investigator(s):* Sgt. Mensch, Group 54

*Subject:* **INVESTIGATE DEATH IN NYPD CUSTODY – 079 PCT. CONFINES /
EMERGENCY SERVICES UNIT PERSONNEL**

*Investigative Action:* PG 206-13 Hearing with PO Nicholas Marchesona, Sh#
19091, Tax# 921535, Emergency Services Unit Truck# 5.

*Time:* 1230

*Date:* 10-30-2008

        I/O conducted a PG 206-13 Hearing at the QSIU / 107 Pct. with PO
Marchenosa who was questioned as a subject officer and represented by
PBA Attorney Steven Worth and Chris Wright, B.N. PBA Trustee. In sum and
substance, PO Marchesona stated the following information.

        PO Marchesona stated that on Wed, Sept. 24, 2008, he performed an
0600 x 1800 tour (12 Hr. tour). PO Marchenosa, partnered with Det. McLaughlin,
stated he turned out of the Staten Island ESU facility on the date of incident.

        PO Marchesona stated that his unit received a request from S.O.D.
Communications through the local precinct to respond to an address (491
Tompkins Av.) where police were having problems with an EDP (Emotionally
Disturbed Person), Iman Morales. PO Marchesona stated his unit responded
from the Brooklyn North area confines and it took him about (10) minutes to
respond.

        Upon arrival and about 1352 hours, PO Marchesona stated that other
patrol officers from the command were at the scene, including one patrol
supervisor. PO Marchesona stated he was given a brief description of what had
transpired, in that the EDP had been off his medication and in the past week had

NYC000638

been told that he had acquired the H.I.V. (Human Immuno-Deficiency Virus) and had been fighting with his mother who was also present at the scene. He stated he observed the EDP (Emotionally Disturbed Person) leaning out of a window on the 3rd floor window of the location and yelling at persons on the street.

PO Marchesona and Det. McLaughlin treated their response as a barricaded EDP and suited up with their heavy vests and helmets. Entry tools and a bunker were removed from the ESU Truck, inclusive of a TASER that PO Marchesona placed into his pant's cargo pocket. PO McLaughlin radioed that they were on a barricaded EDP job that required the response of additional personnel, usually (6) officers and a boss. ESU Truck# 8 and an "Adam Car," (Smaller ESU vehicle) responded to the scene.

PO Marchesona stated that once additional ESU personnel were notified, he and Det. McLaughlin responded to the EDP's apartment door and tied it closed to prevent him from exiting. They were directed to the EDP's door by an unidentified woman in the apartment who told them the EDP's name. Upon approaching the EDP's door, a female tenant on the upper fourth floor yelled to them, "Help, help," in that the male (EDP) was trying to get into her apartment from the window. The two officers responded to her apartment and observed the EDP (Iman Morales) trying to yank the air conditioning unit out to gain access into the woman's apartment. Mr. Morales observed ESU personnel through the window and it was requested by police that he come inside. Mr. Morales stated no and ran down the fire escape from the fourth floor to the fire escape's lowest level. PO McLaughlin removed the air conditioner from the window and now both ESU officers could see two other ESU officers arrive in ESU Truck# 8. He identified these officers as Detectives King and Stevens. One of the officers began a dialogue with Mr. Morales as the other suited up in heavy vest and helmet. Either Det. King or Stevens responded into the location to the third floor level as the other ESU officer remained with the Truck as required. Det. McLaughlin then returned back to the third floor to assist an ESU officer with gaining entry into Mr. Morales' third floor apartment. Det. McLaughlin and a second officer had difficulty utilizing the "Rabbit tool" to gain entry into the apartment and radioed on 'Tac G' for ESU personnel to respond with a ram tool.

PO Marchesona stated he looked out the fourth floor window and observed the smaller "Adam car" arrive with two additional ESU personnel. "Adam car" personnel exited and PO Marchensona identified one officer as Det. Zajac who donned a rope harness as Mr. Morales remained out on the fire escape. PO Marchenosa stated the barricaded "EDP job" was now determined to be a potential, "Jumper job." PO Marchesona stated Det. Sullivan from the "Adam car" obtained the "Rope bags" and the ram that was previously requested by personnel on the third floor and responded to the location. PO Marchesona stated that another "Adam car" responded to the scene at this time. PO Marchesona stated he could now hear ESU officers breaching Mr. Morales' door and making their way into the apartment and out the window where they engaged in a dialogue with Mr. Morales who was still on the fire escape at the first floor level.

PO Marchesona stated Detectives Sullivan and Zajac now made their way from the third floor, down the fire escape toward Mr. Morales. Mr. Morales then decided to maneuver himself from the fire escape landing on the first floor level to the adjacent fire escape ladder that was in the "up position" as he leaned backwards from the fire escape. Mr. Morales looked up at ESU personnel and numerous times stated, "Oh, I'm so going to die today." PO Marchesona stated the entire time, Mr. Morales had been yelling statements to the crowd below of about (200) persons and the crowd in turn was telling Mr. Morales to jump as they took photos with their camera phones.

PO Marchesona stated that with only one ESU officer outside on the street, PO McLaughlin responded to the street level from the third floor in case Mr. Morales made it to the sidewalk. PO Marchesona, in possession of the bunker tool, departed the fourth floor to the street level and dropped the bunker in the hallway of the location as he exited. Upon leaving the building and passing a patrol supervisor in the hallway, he observed his partner, Det. McLaughlin, either Det. Stevens or King and ESU Lt. Pigott. He overhead Lt. Pigott question two ESU officers with him if either of them had a TASER. Both replied no before Lt. Pigott questioned PO Marchesona if he had a TASER. PO Marchesona replied yes and about this time, PO Marchesona observed that Mr. Morales had moved himself from the fire escape ladder onto the roll down (*Security*) gate adjacent to it. He stated Mr. Morales had acquired a light bulb (*Fluorescent Tube*) in his hand and was hit Det. Sullivan on his buttocks bout two times. He described that Det. Sullivan had his back turned to Mr. Morales as Mr. Morales hit him with the bulb. Det. Marchesona believed that at this time, both Detectives Zajac and Sullivan may have had themselves clipped or harnessed onto the fire escape to keep from falling.

PO Marchesona pulled out the TASER from his left cargo pocket and at this moment was directed by Lt. Pigott to, "Get over here and TASER him." PO Marchesona stated he then switched the TASER into the on position. He stated that doing this caused a laser light to illuminate on the TASER and he put this light, center-mass on Mr. Morales who stood on the roll down gate. PO Marchesona stated that the fire escape ladder that Mr. Morales had just stepped off of came crashing to the ground on top of a metal cellar door in the sidewalk but he was not sure if it were Mr. Morales or ESU personnel that caused the ladder to release. PO Marchesona stated that as soon as he centered the laser on Mr. Morales, he pulled the trigger and only depressed it one time, until the TASER stopped cycling on it's own. PO Marchesona stated he did not recall squeezing the TASER's trigger a second time.

PO Marchesona stated Mr. Morales froze up after he was struck with the TASER leads as he called to Det. Zajac to grab Mr. Morales. PO Marchesona stated that he believed that in order for Det. Zajac to grab Mr. Morales from his position, he had to unhook his harness from one side in an effort to try and get close. PO Marchesona stated that because of the cycle of the TASER, he realized that Det. Zajac would only have had (5) seconds to unhook himself. PO

Marchesona stated that once the TASER stopped it's cycle, Mr. Morales fell straight down, subsequently landing on his forehead to PO Marchesona's left-hand side.

PO Marchesona assisted investigators with identifying ESU personnel at the scene from civilian photographs taken at the location at the time of this incident. Photocopies of these pictures are filed to enclosure [ II ].

**Invest. Off.** _____   **Supv.** _____
Det. Mark E. Dennis                           Lt. Thomas Panetta

**X.O.** _____   **C.O.** _____
Capt. Brandon del Pozo                     D.I.  Patrick J. Keane

**Code: IM113 / Enclo:** HH-Attend. Sheet / II-Photo Identifications **W.S.#** 113

NYC000641

Exhibit D

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | | Crime/Condition INVESTIGATE AIDED | Cmd Code 298 | Date of This Report 09/24/2008 |
|---|---|---|---|---|

| Date of UF61 09/24/2008 | Date Case Assigned 09/24/2008 | Complaint No. | Case No. 2252 | Unit Reporting SQUAD | | Follow-Up No. 4 |
|---|---|---|---|---|---|---|

| Complainant's Name MORALES, IMAM | | Nickname, First Name, Alias | | Address | | Apt No. |
|---|---|---|---|---|---|---|
| Sex MALE | | Race WHITE HISPANIC | | Date of Birth 12/31/1972 | | Age 35 |
| Home Telephone | | Business Telephone | | Cell Phone | | E-Mail Address |

| Person Interviewed Last Name, First M.I. NEGRON, OLGA | | Nickname, First Name, Alias | | Address 425 MAIN STREET MANHATTAN NY | | Apt No. |
|---|---|---|---|---|---|---|
| Position/Relationship MO | Sex FEMALE | | Race WHITE HISPANIC | Date of Birth 06/18/1953 | | Age 55 |
| Home Telephone | Business Telephone | | Cell Phone | E-Mail Address | | |

**Topic/Subject:**
INTERVIEW OF MOTHER (OLGA M NEGRON)

**Summary of Investigation:**
1. On September 24, 2008, at approximately 1500 hrs, the undersigned along with Detective Harvey were present at Kings County Hospital emergency room for purpose of interviewing Olga Negron.
Miss Negron was visibly distraught . She states the following;
My son Imam he was a good boy. He has been taking medication all his life. He has been diagnosed with schizophrenia and Bi polar disorder. He has gone to the hospital many times. Both -Israel, Kings County and back in California. He has been upset lately. He has HIV and hepatitis- c.
He has been fighting about his disability. He has Binder and Binder the Lawyers working on his case. He was acting funny for the last few days, not himself. He thinks people are following him around he is very paranoid. He stayed a few days with me, then he went home. He spoke with me last night he tells me that he has a doctor appointment at two thirty thirty today and I told him I would go with him. I came over to the house after my appointment and he woul d not open the door. He was yelling from the window. He was acing strange. He had no shirt on . This was not like him. He was self conscious about himself. He wanted to know who I was with. A neighbor came and I was able to get into the building. I went to his door and he opened it and just had a towel on. He slammed it and was yelling that I was bringing these people around. I tried to get him to speak with me. I went down stairs and he was at the window he was yelling at me. I went to my car and call ed my other son. He continued to go in and out yelling and cursing. The police soon came. He was naked, my son, he came out side the people were yelling at him laughing some were taking pictures. He started going up and down and the fire escape the police were trying to get him but he just keep yelling. My son was sick. Why did this happen. He told me that his medication was changed a few week ago.

CASE ACTIVE

| Reporting Officer: | Rank DT1 | | Name MICHAEL PRATE | | Tax Reg. No. 866311 | Command 298 |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 09/25/2008 | Date of Next Review | Name JOHN COUGHLIN | | Supv. Tax No. 897255 |

NYC000174

Exhibit E

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | | Crime/Condition INVESTIGATE AIDED | Cmd Code 298 | Date of This Report 09/24/2008 |
|---|---|---|---|---|

| Date of UF61 09/24/2008 | Date Case Assigned 09/24/2008 | Complaint No. | Case No. 2252 | Unit Reporting SQUAD | | Follow-Up No. 7 |
|---|---|---|---|---|---|---|

| Complainant's Name MORALES, IMAM | Nickname, First Name, Alias | Address NY | Apt No. |
|---|---|---|---|
| Sex MALE | Race WHITE HISPANIC | Date of Birth 12/31/1972 | Age 35 |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address |

| Person Interviewed Last Name, First M.I. HENRY, VIVIAN | Nickname, First Name, Alias | Address | Apt No. |
|---|---|---|---|
| Position/Relationship ST | Sex MALE | Race BLACK | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address |

**Topic/Subject:**
INVESTIGATE AIDED

**Summary of Investigation:**
1. On September 24, 2008, at approximately 1650 hrs, I did speak with the above listed witness who states the following; I was coming to the building to get some suff when I get up to the building the police and the fire trucks are there. I see the tenant on the 2nd floor and he is on the fire escape and he got no clothes on. He is on the fire escape and he is acting crazy. He is swinging the big lights at the police. The police were trying stop him. He kept trying to hit or stick the officer on the fire escape. Then he just jumped forward to the ground. They did their best to help him. He wanted to jump and just jumped off.

Case Active

| Reporting Officer: | Rank DT1 | Name MICHAEL PRATE | | Tax Reg. No. 886311 | Command 298 |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 09/25/2008 | Date of Next Review | Name JOHN COUGHLIN | Supv. Tax No. 897255 |

NYC000177

Exhibit F

| | **COMPLAINT - FOLLOW UP INFORMATIONAL REPORT** | | Crime/Condition | Cmd Code 79 | Date of This Report 09/24/2008 |
|---|---|---|---|---|---|

| Date of UF61 09/24/2008 | Date Case Assigned 09/24/2008 | Complaint No. 2008-079-08212 | Case No. 2252 | Unit Reporting SQUAD | | Follow-Up No. 8 |
|---|---|---|---|---|---|---|

| Complainant's Name MORALES, IMAN | Nickname, First Name, Alias | | Address 489 489 TOMPKINS BROOKLYN NY | | Apt No. 4 |
|---|---|---|---|---|---|
| Sex MALE | Race WHITE HISPANIC | | Date of Birth 11/10/1974 | | Age 33 |
| Home Telephone | Business Telephone | | Cell Phone | | E-Mail Address |

| Person Interviewed Last Name, First M.I. WRIGHT, TANYA | | Nickname, First Name, Alias | Address | | Apt No. |
|---|---|---|---|---|---|
| Position/Relationship FR | Sex FEMALE | Race BLACK | | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | | E-Mail Address | |

**Topic/Subject:**
(CANVASS) INTERVIEW OF TANYA WRIGHT

**Summary of Investigation:**
1. On September 24, 2008, at approximately 1605 hours the undersigned investigator did interview Tanya Wright on the corner of Decatur street and Tompkins avenue. She stated this in essence:
She was in her apartment when she heard someone yelling in the hallway. She did not look outside her door at the time. She then went to the front of her apartment to the window that faces the street and she saw the man who lives in her building trying to push in her air conditioner in her window to gain access to her apartment. He was screaming at her repeatedly "Let me in, let me in". She did not let him in the apartment because she was in fear for her safety because she stated that he has a history of mental problems. The police then gained access to her apartment and escorted her downstairs for her safety. She then stated that when she was outside she observed the man from her building standing naked on a ledge next to her fire escape. She said he was trying to hit the police with a long light bulb and the next thing that happened was he fell off the ledge. Mrs Wright was asked by the undersigned if she had any video of the incident and she stated that she did not.

2. For your information

3. Case Status: Active

| Reporting Officer: | Rank DT3 | Name MICHAEL MANZOLILLO | | Tax Reg. No. 921533 | Command 298 |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 09/25/2008 | Date of Next Review | Name JOHN COUGHLIN | Supv. Tax No. 897255 |

Exhibit G

Detective Bureau - DD5 Attachments

| | **COMPLAINT - FOLLOW UP INFORMATIONAL REPORT** | Crime/Condition AIDED CASE | Cmd Code 79 | Date of This Report 09/25/2008 |
|---|---|---|---|---|

| Date of UF61 09/24/2008 | Date Case Assigned 09/24/2008 | Complaint No. 2008-079-08212 | Case No. 2252 | Unit Reporting SQUAD | Follow-Up No. 10 |
|---|---|---|---|---|---|

| Complainant's Name MORALES, IMAN | Nickname, First Name, Alias | Address 489 TOMPKINS AVENUE BROOKLYN NY 11216 | | Apt No. 4 |
|---|---|---|---|---|
| Sex MALE | Race WHITE HISPANIC | Date of Birth 12/31/1972 | | Age 35 |
| Home Telephone | Business Telephone | Cell Phone | | E-Mail Address |

| Person Interviewed Last Name, First M.I. COLY, TOUTY | Nickname, First Name, Alias | Address | | Apt No. |
|---|---|---|---|---|
| Position/Relationship ST | Sex FEMALE | Race BLACK | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address | |

Topic/Subject:
(INTERVIEW) WITNESS INTERVIEW- TOUTY COLY

Summary of Investigation:

1. On September 24, 2008, at approximately 1530 hours the U/S spoke with Touty Coly inside her place of business, "Braiding Hut" The beauty pallor is located at 490 Tompkins Avenue. She stated the following in connection to this case; For about 40 minutes before the Police arrived the guy who fell, I think he just moved here was yelling and screaming from his window (3rd Floor). The U/S asked her what he was screaming and she replied " I am gonna die, I am not Satan and Your gonna die with me".

2. She continues on, when the Police arrive he is naked and screaming at the Police. He was saying all those things and "Fuck you, your gonna die with me". She states that he is now on the fire escape and climbing down the ladder and then stands on the roll gate cover roof. He has a white stick in his hand and he is waving it back and forth at the Police. He has one hand on the ladder, still waving the white stick and trying to poke the policeman with it. He is screaming "I am gonna kill me and you". She states that she sees the naked man shake and he falls to the ground after Police use electric on him. Then an ambulance comes and takes him away. The U/S queried were he got the white stick and she replied she didn't know.

3. The U/S reviewed her statement with same. She stated that prior to the arrival of the Police he was standing in the window screaming all those things for about 10 minutes. What she meant was that the whole incident was about 40 minutes long. She stated that t he naked man climbed up the ladder (fire escape) to the top floor and tried to push the window open (4th floor) with the air conditioner in it. He then climbed d down the ladder and the Police were in the windows. The naked man then climbs down the ladder and the police were trying to talk to him, the U/S asked if she can hear what the Police were saying and she replied no, she states that the crowd was yelling at the man and making fun of him, it was loud. She the states that she thinks the aided me ther was there but not sure. When asked for her home address and telephone number she stated that she would only reveal her work address and telephone number.

2. For your information.

| Reporting Officer: | Rank DT2 | Name JAMES TISCHLER | | Tax Reg. No. 912087 | Command 298 |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 09/25/2008 | Date of Next Review | Name JOHN COUGHLIN | Supv. Tax No. 897256 |

NYC000180

Exhibit H

# DEADLY TASER BLAST

## Man falls after being stunned in B'klyn standoff

BY KERRY BURKE and ALISON GENDAR
DAILY NEWS STAFF WRITERS

NAKED AND PERCHED on a ledge, a disturbed man fell to his death in Brooklyn yesterday when cops Tasered him without placing an air bag below, witnesses and police sources said.

Inman Morales, brandishing a light bulb, plunged 10 feet and landed headfirst on the pavement outside his Bedford-Stuyvesant apartment building. He was declared dead at Kings County Hospital.

"When they Tasered him, he froze and pitched forward. He fell on his head," said witness Ernestine Croom, 40. "They didn't put out a mattress or a net or anything."

Morales hit the ground while an air bag was being brought to the site, police sources said.

Neighbors said Morales, 35, had "freaked out" earlier in the day, and his mother called the police at 1:52 p.m., saying he was threatening to hurt himself and had stopped taking his medication. The first police Emergency Service Unit truck arrived at Morales' third-floor Tompkins Ave. apartment about 2:05 p.m., police sources said.

Morales refused to allow police into the apartment, crept nude onto the fire escape and tried to enter Tanya Wright's fourth-floor window when police forced their way into his apartment.

"He tried to get into my window. He banged. He said, 'Let me in! Let me in!' But no way I'm letting a naked man into my apartment," said Wright, 40.

So Morales crawled down the fire escape, screaming and posing for gawkers as he went, other witnesses said. "When the police came, he was screaming. 'You're gonna kill me!' and 'I'm gonna take everyone with me! I'm gonna die and you're gonna die with me!'" said neighbor Sean Johnson, 43.

Morales left the fire escape and stepped onto the 2-foot-wide metal top of a rolldown security gate for a ground-floor business. He then ripped an 8-foot-long fluorescent light bulb from the business' sign.

From his perch, Morales jabbed at ESU officers, who were using themselves to the fire escape so they would not fall when they grabbed him.

When Morales started to swing the light bulb like a bat, an ESU officer on the ground fired a Taser at him. The Taser, which is designed to stun, can deliver a five-second jolt of 5,000 volts of electricity through two wires and has a range of 21 feet.

Morales hit the ground at 2:27 p.m. The NYPD is investigating the incident.

A woman who identified herself as Morales' mother said, "I don't know what to say. We're going through a hard time right now. I can't even speak."

Patrol sergeants and ESU cops are trained to fire Tasers, which have been used by the NYPD since 1984. An independent review recommended the NYPD expand Taser use as an alternative to more lethal methods.

A Brooklyn man died in January 2007 after he was stunned with a Taser and suffered a heart attack.  **With Edgar Sandoval**

*agendar@nydailynews.com*



Cops zap Inman Morales with Taser as he pokes at them with fluorescent light bulb after the naked man "freaked out" yesterday. He fell to his death. Photo by Charles Hutton

☆ ☆ ☆

Index No. 09 CV 00944 (SLT)(SMG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OLGA NEGRON, as Administrator of the Estate of
IMAN MORALES, Deceased and OLGA
NEGRON, Individually,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

Defendants.

**NOTICE OF MOTION, DECLARATION OF
RACHEL SELIGMAN WEISS AND
SUPPORTING EXHIBITS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel: Rachel Seligman Weiss*

*Tel: (212) 788-0784*
*NYCLIS No.*

*Due and timely service is hereby admitted.*

*New York, N.Y. ........................................ ,2010*

*.................................................... Esq.*

*Attorney for City of New York*